1  Michael McShane (CA State Bar # 127944)
   mmcshane@audetlaw.com
2  Jason T. Baker (CA State Bar #212380)
   jbaker@audetlaw.com
3  AUDET & PARTNERS, LLP
   221 Main Street, Suite 1460
4  San Francisco CA 94105
   Telephone: 415.982.1776
5  Facsimile: 415.568.2556

6  *Lead Counsel for Plaintiffs*
   *and the Proposed Class*
7  *(Additional Counsel on Signature Page)*

8

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                                    )
                                      )
13  MARIO CONTRERAS and MADELINE      )   No. <u>JL-6024</u>
    HUNTER, on behalf of themselves and )
14  others similarly situated,        )
                                      )   MEMORANDUM OF POINTS AND
15                      Plaintiffs,   )   AUTHORITIES IN OPPOSITION TO
                                      )   DEFENDANT'S MOTION TO DISMISS
16          v.                        )
                                      )
17  TOYOTA MOTOR SALES USA, INC.;     )
    and DOES 1 though 50,             )   Judge:    Hon. Jeffrey S. White
18                                    )   Date:     June 11, 2010
                        Defendants.   )   Time:     _9:00 a.m.
19                                    )   CTRM:     11, 19th Floor
                                      )
20                                    )
                                      )
21

22

23

24

25

26

27

28

                    **OPPOSITION TO MOTION TO DISMISS**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD .......................................................................................... 2

III.    FACTS ................................................................................................................ 3

IV.    ARGUMENT ....................................................................................................... 5

    A.   Plaintiffs Have Standing ........................................................................ 5

    B.   The Special Service Campaign Notice Toyota Sent Was Deceptive ........................... 8

    C.   Toyota Omitted Critical Facts About the Defect .................................................. 9

        1.   Omissions Are a Sufficient Basis for Liability ................................................. 10

        2.   The Complaint Satisfied Rule 9(b) for Fraud by Omission ....................................... 10

        3.   Fraudulent Omissions Are Actionable Under the CLRA ................................................ 12

        4.   Toyota Had a Duty to Disclose The Brake Defect Because it was an Unreasonable Safety Risk ..................... 12

        5.   Plaintiffs Have Also Alleged the Traditional Elements Giving Rise to a Duty of Disclosure. ....................... 13

           a.   The Defect is a Material Fact Within Toyota's Exclusive Knowledge. ........ 14

              i.   The Fact that a Car's Brakes Might Fail, Depending on the Weather is Material. ......... 14

              ii.   Toyota Had Exclusive Access to Information Regarding the Defect. .... 14

           b.   Toyota Actively Concealed the Defect. .................................................. 15

           c.   The Complaint Adequately Pleads Reliance. ........................................... 16

    D.   Plaintiffs Have Sufficiently Alleged Violations of the California Unfair Competition Law. ........................ 16

        1.   Plaintiffs Alleged That Toyota Engaged in Fraudulent Conduct in Violation of the UCL. ............... 17

        2.   Plaintiffs Properly Allege Under the UCL That Toyota Engaged in Unlawful Practices Under the CLRA ............ 17

        3.   Plaintiffs Alleged That Toyota Engaged in Unfair Practices under the UCL. .............. 18

    E.   Plaintiffs Have Sufficiently Alleged Breach of the Express Warranty and the Implied Warranty of Merchantability. ............ 18

V.     CONCLUSION ................................................................................................... 19

# TABLES OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)................................................................3

*Atkinson v. Elk Corporation of Texas*, 142 Cal. App. 4th 212 (2007) ..........................18

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)..............................................2

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999). ..16, 17

*Chamberlan v. Ford Motor Co.* (N.D.Cal. 2004) 314 F.Supp.2d 953 ............................12

*Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3d 197 (1983)................17

*Daugherty v. American Honda Motor Co., Inc.,* (Cal. App. 2d Dist. 2006) 144 Cal. App. 4th 824 ................................................................................................................12, 17

*Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326 ........................................6

*Falk et al. v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)...........11, 12, 13, 14

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)........................................3

*Glover v. BIC Corp.*, 6 F. 3d 1318 (9th Cir. 1993) ....................................................13

*Goodman v. Kennedy*, 18 Cal. 3d 335 (1976) ..........................................................14

*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845 (2002) ........................................18

*Hynix Semiconductor Inc. v. Rambus Inc.*, 441 F. Supp. 2d 1066 (N.D. Cal. 2006) ...................14

*Larner v. Los Angeles Doctors Hospital Associates, LP* (2008) 168 Cal.App.4th 1291 ...............6

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ....................................................14

*Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001) ..................................................16

*McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174 ..............................................12

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993)....................................................10

*Outboard Marine v. Superior Court* (1975) 52 Cal.App.3d 30 .............................12, 16

*Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) ..............................17

*Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917 (2003)..................................18

*Shapiro v. Sutherland*, 64 Cal. App. 4th 1534 (1998)................................................15

*Stevens v. Superior Court*, 180 Cal. App. 3d 605 (1986)............................................16

*Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528 ............6

*United States v. General Motors Corp.*, 65 F.R.D. 115 (D.D.C. 1974) ........................13

*Vess v. Ciba-Geigy Corp*,. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ........................................ 10

*Wallace v. GEICO Gen. Ins. Co*., 2010 Cal. App. LEXIS 532 (Cal. App. 4th Dist. Apr. 19, 2010) ................................................................................................................................... 2, 6, 7

*Washington v. Baenziger,* 673 F.Supp. 1478 (N.D.Cal.1987) ........................................... 11

*Watkins v. Wachovia Corp*., 172 Cal. App. 4th 1576 (Cal. Ct. App. 2009) .............................. 5, 6

*Weiss v. Regal Collections* (3d Cir. 2004) 385 F.3d 337 .......................................... 6, 7

*William O. Gilley Enter., Inc. v. Atlantic Richfield, Co*., 561 F.3d 1004 (9th Cir. 2009) .............. 3

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................ 16

Cal. Civ. Code § 1782 (b)-(c) ...................................................................................... 2

Cal. Civ. Code § 1782(c)(1)-(3) .................................................................................. 8

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 2

**Treatises**

Witkin, CALIFORNIA PROCEDURE, Pleading § 678 (4th ed. 1997) ............................... 16

Witkin, SUMMARY OF CALIFORNIA LAW, Torts § 793 (10th ed. 2005) ........................ 15

Witkin, SUMMARY OF CALIFORNIA LAW, Torts § 798 (10th ed. 2005) ........................ 16

WRIGHT & MILLER, § 1298 ........................................................................................ 10

**OPPOSITION TO MOTION TO DISMISS**

1    I.      INTRODUCTION

2            All the subject vehicles were sold with defectively designed brakes.  Defendant does not

3    and cannot deny this fact.

4            Toyota has refused to tell all affected owners clearly and directly that their brakes are

5    defective, must be fixed, that Toyota will fix the defect and reimburse for related expenses.

6            Rather than make plaintiffs and the proposed class whole, Toyota has chosen to defend

7    against this lawsuit; in doing so Defendant makes three primary claims.

8            First, Toyota claims the defective brakes are likely to work even in cold temperatures.

9            Having brakes that are likely – even quite likely – to work is not the standard for a

10   consumer automobile.  Consumers reasonably expect their brakes to work and to be free from

11   design defects that could cause them to fail.  Plaintiffs and proposed class members did not

12   receive the benefit of their bargain.

13           Second, Defendant claims that the notice sent to owners whose cars were registered in the

14   31 non-recall states (a.k.a. the "non-cold-weather" states) was actually a recall, and that it

15   ameliorated the problem.  This is patently untrue.  If Toyota wanted to recall all affected cars, it

16   could have sent the same recall notice to all 50 states.  It did not.

17           Instead, Toyota issued two separate notices.  Toyota did issue a recall, but only for

18   owners in the 19 states Toyota thought were sufficiently cold to cause the defect to manifest.

19           Toyota sent a separate notice, something Toyota has called a "special service campaign",

20   to those in the remainder of the states.  The Complaint pleads that this notice was deceptive and

21   intended to conceal the fact that all of the vehicles, no matter their state of registration, had a

22   serious and potentially life-threatening defect that must be addressed.

23           Whether this mailer was deceptive – whether it was intended to and succeeded in

24   reducing the number of brake repairs for which Toyota had to pay – is a question of fact, not

25   appropriate for decision at the Motion to Dismiss stage.

26           Finally, Toyota notes that well after the initial Complaint was filed, and months after the

27   demand under the Consumers Legal Remedies Act was sent, Toyota made a repair to the lead

28   Plaintiffs' vehicles.  Toyota omits that these Plaintiffs still have some damage include diminution

1  of value of their vehicles..  The named plaintiffs still have some damages and can maintain a

2  claim on that basis.

3      More importantly, the Consumers Legal Remedies Act and associated case law provide

4  that an action may be maintained even after the lead plaintiffs have been "picked off" by a

5  defendant hoping to avoid a class-wide remedy.  Civ. Code § 1782 (b)-(c).

6      In a case decided since Toyota filed its Motion, the California Court of Appeal applied

7  these "pick-off" line of cases to Business and Professions Code 17200 even after the "actual

8  injury" requirement imposed by Proposition 64.   *Wallace v. GEICO Gen. Ins. Co*., 2010 Cal.

9  App. LEXIS 532 (Cal. App. 4th Dist. Apr. 19, 2010)

10      To hold otherwise in a case like this would put potential lead plaintiffs in Hobson's

11  choice between ensuring their automobile was safe to drive, and ensuring their fellow proposed

12  class members (including those with whom they share the road) could be sufficiently informed to

13  have their brakes repaired and their out of pocket expenses reimbursed.

14      This lawsuit demands that Toyota tell all owners of these vehicles that their brake system

15  is defective, it is not safe to drive in cold weather, and that their vehicle is being recalled for an

16  important safety repair.   Toyota should also reimburse all owners for their out of pocket

17  expenses incurred in complying with the recall and for the diminution in the value of their

18  vehicles.

19      The very purpose of a car is to travel.  To limit this recall to 19 states was an

20  unconscionable attempt to save money at the expense of owners whose resale value and safety

21  will not be intact until Toyota makes them whole.

22  **II.      LEGAL STANDARD**

23      A claim for relief must be supported by "a short and plain statement showing that the

24  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has made clear that

25  they, "do not require heightened fact pleading of specifics, but only enough facts to state a claim

26  to relief that is plausible on its face.". *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974

27  (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

28

1    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

3          A well-pleaded complaint should be sustained "even if it strikes a savvy judge that actual

4    proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *William*

5    *O. Gilley Enter., Inc. v. Atlantic Richfield, Co.*, 561 F.3d 1004, 1009 (9th Cir. 2009) (quoting

6    *Twombly*, 550 U.S. at 556).  The issue is not whether the non-moving party will ultimately

7    prevail but whether it is entitled to offer evidence to support the claims asserted.  *Gilligan v.*

8    *Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

9    **III.    FACTS**

10         Plaintiffs in this case allege that certain models of Toyota vehicles have dangerously

11   defective brakes.  The parties agree that in certain cold weather conditions, condensation can

12   freeze in the brake vacuum assist for these vehicles, causing the vehicles to be considerably more

13   difficult to stop.  The parties do not agree on precisely how cold and what conditions may trigger

14   this – in part because Toyota has not been forthcoming about its investigation into when the

15   defect manifests.  Defendant has now, in its Motion to Dismiss, disclosed an actual temperature

16   threshold below which (and Toyota alleges only below which) it believes this defect may

17   manifest.[1]  Defendant's Motion to Dismiss ("Motion") at 1:19-21.  No temperature threshold or

18   even temperature range was mentioned in any correspondence sent to proposed class members.

19         The complaint alleges that Defendant has issued a recall of some, but not all, of the

20   affected vehicles. Amended Complaint ("AC") at ¶7.  Although all the vehicles were sold with

21   the defect, Toyota's recall was limited to 19 states.  AC ¶7, Motion at 1:21-22.

22         Toyota sent a separate letter, which Toyota called a "special service campaign" ("The

23   SSC letter") to owners in the remaining non-recall states. AC ¶36; 52.  A true and correct copy of

24   the SSC letter is attached as Exhibit A to the Declaration of Jason Baker ("Baker Decl."), filed

25   concurrently herewith.

26

27   _____

28   [1] This unfounded and improper assertion, and the entire declaration upon which this assertion is based, is the
     primary subject of Plaintiffs' Motion to Strike, filed concurrently herewith.

1     The complaint alleges that this letter was deceptive, including in that it led owners in

2   Non-Recall states to believe their vehicles [were] not affected. AC¶¶37; 38; 50; 52-60.  Even

3   those owners who understood that their vehicles were affected were left (intentionally)

4   uninformed about the serious nature of the problem, and were put in an impossible position, with

5   Toyota omitting critical information (including under what circumstances owners' brakes might

6   fail).  AC ¶53-60.

7     The further Complaint alleges that Toyota CEO Aiko Toyoda reassured all consumers

8   that "Believe me, Toyotas are safe".  AC¶61.  He did not say only that their accelerators were

9   safe.  This statement, in light of Toyota's actual knowledge that thousands of Toyota owners

10   were driving Toyotas with defectively designed brakes, was false. AC¶62.

11     Plaintiffs sent a letter on November 12, 2009, pursuant to California Civil Code §1782 et

12   seq. demanding that Toyota properly inform all owners of the defect and repair all defective

13   vehicles. AC ¶86-88; Baker Decl. Exh B.    To this date they still have not done so.

14     The absurdity of Toyota's position is revealed when one considers the practical impact of

15   "cold-weather" versus "non-cold-weather" line of demarcation Toyota has drawn.  For example,

16   owners in Nevada received a recall notice.  However an owner in California, just down the street

17   and across the state line in Lake Tahoe, California did not.  Presumably because the snow on the

18   California side of the lake is not as cold as the snow on the Nevada side?  Of course Toyota also

19   did not tell California Toyota owners not to drive their vehicles into Nevada, lest the brakes fail.

20   Nor, for that matter, did Toyota tell California (or any other non-recall state owners) not to travel

21   to any of the 19 listed states.  Also missing from Toyota's notice was any warning not to sell the

22   vehicle to anyone who lived, worked, traveled to or vacationed in any of the 19 recall states

23   without appropriate disclosures including that the brakes may not work.  Faced with numerous

24   well-publicized other recalls, Toyota has apparently decided to try to save some money by

25   limiting this one.

26     Plaintiffs seek class action status, restitution, damages, injunctive relief and attorneys'

27   fees.

28

4
**OPPOSITION TO MOTION TO DISMISS**

1    **IV.    ARGUMENT**

2         **A.    Plaintiffs Have Standing**

3         Contrary to Defendant's assertions, Plaintiffs have been damaged and, therefore have

4    standing to sue.  Although Toyota, finally decided to repair the representative plaintiffs' vehicles,

5    plaintiffs still have diminution in value of the vehicles (even after the repair).

6         In addition, Plaintiffs have standing to sue because Defendants have not made the class

7    whole.  California consumer law does not permit defendants to, as Toyota attempts here, simply

8    "pick off" representative plaintiffs as a way to deny remedying the wrong for the entire proposed

9    class.

10         The California Court of Appeal has described the issue as when,

11              . . . prior to class certification, a defendant in a proposed class
               action gives the named plaintiff the entirety of the relief claimed
12              by that individual.  The defendant then attempts to obtain dismissal
               of the action, on the basis that the named plaintiff can no longer
13              pursue a class action. . . The cases are sometimes referred to as
               "pick off" cases, as the defendant seeks to avoid exposure to the
14              class action by "picking off" the named plaintiff, sometimes by
               picking off named plaintiffs serially.

15

16   *Watkins v. Wachovia Corp*., 172 Cal. App. 4th 1576, 1590 (Cal. Ct. App. 2009) (internal

17   citations removed).

18         Such is the case here.  Toyota limited its recall only to 19 states as a way for Toyota to

19   avoid paying for fixing all the vehicles with defective brakes.  Toyota then sent a notice to

20   individuals in other states, including plaintiffs.  That notice was intentionally misleading and

21   intended to minimize the number of individuals who would actually understand that the brakes

22   on their vehicles were defective (and thus ask to have them fixed).

23         On November 12, 2009, Plaintiffs sent Toyota a letter under the Consumers Legal

24   Remedy Act demanding repairs for themselves and those similarly situated.  Baker Decl., Exh.

25   B.  Toyota refused to send out a clear notice, recall the affected vehicles and repair the defect.

26   Accordingly, on December 23, 2009, Plaintiffs filed the original complaint.  Then, according to

27   Defendant's Motion, Plaintiffs' vehicles were miraculously repaired in late January, 2010.

28

1    What actually occurred is that Plaintiff Contreras took his vehicle in for a routine oil

2    change, nothing more.  Part way through, the mechanics asked him to wait a little longer.  At the

3    end, Mr. Contreras looked at the receipt and realized that they had not only changed his oil, but

4    conducted service on his vehicle for the brake defect.

5    While this is good for Mr. Contreras in that his vehicle is, after hiring attorneys, sending

6    a request under the C.L.R.A., and filing and original and amended class action complaint, finally

7    apparently repaired, this is not a permissible way for a defendant to defeat a class action

8    complaint and avoid providing remedy to a class.

9    As the Court of Appeal noted in Watkins, "Courts have concluded that the involuntary

10   receipt of relief does not, of itself, prevent the class plaintiff from continuing as a class

11   representative."  *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1590 (Cal. Ct. App. 2009);

12   see also *Larner v. Los Angeles Doctors Hospital Associates, LP* (2008) 168 Cal.App.4th 1291,

13   1299 (case law "prevents a prospective defendant from avoiding a class action by 'picking off'

14   prospective class-action plaintiffs one by one, settling each individual claim in an attempt to

15   disqualify the named plaintiff as a class representative"); *Ticconi v. Blue Shield of California*

16   *Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 548 (" '[A] prospective defendant is not

17   allowed to avert a class action by "picking off" prospective plaintiffs one-by-one. Thus,

18   precertification payment of the named plaintiff's claim does not automatically disqualify the

19   named plaintiff as a class action representative.' ").

20   The Court of Appeal for the Fourth Appellate District recently reaffirmed that "Federal

21   case law also disapproves of attempting to moot a class action by picking off a representative

22   plaintiff." *Wallace v. GEICO Gen. Ins. Co.*, 2010 Cal. App. LEXIS 532, 16-17 (Cal. App. 4th

23   Dist. Apr. 19, 2010), citing *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 339

24   (appeal of class certification ruling was justiciable even though defendant afforded relief to the

25   representative plaintiff); *Weiss v. Regal Collections* (3d Cir. 2004) 385 F.3d 337, 348 (where the

26   defendant attempted to pick off the representative plaintiff in a proposed class action through an

27   offer of judgment before the filing of a certification motion, the representative plaintiff would be

28   permitted to proceed with the action and file a certification motion).

Importantly, in the same case, the *Wallace* court affirmed that the "pick off" line of cases apply to class actions brought under the Business and Professions Code even after the "actual injury" amendment effected by proposition 64: "We see no indication in this statement of [voters'] intent that Proposition 64 was intended to render the pick off cases inapplicable in class actions brought under section 17200 et seq. The voter's focus was instead on the filing of lawsuits by attorneys who did not have clients impacted by the defendant's conduct." *Wallace v. GEICO Gen. Ins. Co.*, 2010 Cal. App. LEXIS 532 (Cal. App. 4th Dist. Apr. 19, 2010).

There can be no doubt that Plaintiffs were "real plaintiffs" affected by defendants' wrongdoing. They were sold defective vehicles. At the time the Complaint was filed, their vehicles were still defective, dangerous, and were (and still are) worth far less than if the brakes were not defective. Plaintiffs would not have purchased those vehicles at all, and certainly not for the price they paid, had they known. In short, they had been injured. This is sufficient to maintain Plaintiffs' claim.

If there is any question regarding whether these plaintiffs should remain, that issue can and should be decided not at this stage, but at the Class certification or summary judgment stage. As the court in *Wallace* noted, "Instead of a reflexive dismissal of the representative plaintiff on the basis that he or she lacks standing as the trial court did here—the proper procedure in a pick off situation is for the trial court to consider whether "the named plaintiffs will continue fairly to represent the class" in light of the individual relief offered by the defendant. *Wallace v. GEICO Gen. Ins. Co.*, 2010 Cal. App. LEXIS 532, 17-18 (Cal. App. 4th Dist. Apr. 19, 2010) (internal citations removed); see also *Weiss*, supra, 385 F.3d at p. 348 [allowing class certification motion to be filed after defendant attempted to pick off the representative plaintiff].)

Finally, in addition to the policy-grounded prohibition against defeating a class by picking off representative plaintiffs, the Consumers Legal Remedy Act specifically provides that, in order to moot an action for damages, a defendant must show all of the following:

> (1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.

(2) All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.

(3) The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given.

Cal Civ Code § 1782(c)(1)-(3).

In this case defendants did not offer a class-wide remedy when demanded.

In addition, plaintiffs' complaint is a direct challenge to the sufficiency of Defendants' actions with regard to the second showing: notification. The Complaint charges that the one notification defendants sent to class members was not only insufficient, it was intentionally misleading and deceiving. FAC ¶37,38,51,52,60. Defendant cannot meet its burden to show that the provisions of Civil Code § 1782(c)(1)-(3) have been met.

**B.      The Special Service Campaign Notice Toyota Sent Was Deceptive**

The root of Plaintiffs' Complaint is that Toyota illegally and unfairly concealed  - and continues to conceal - that the Vehicles' brakes are defective and need to be repaired. Plaintiffs and the proposed class would not have purchased, or would not have paid as much for, their vehicles had Toyota disclosed this safety defect, and the fact that they purchased vehicles which could only be safely operated in certain states (if they could safely be operated at all).

Defendants issued their recall in only 19 states. This limitation on the recall was a money saving scheme, and nothing more.

Realizing (correctly) that having such a limited recall might engender liability for failure to disclose or repair the defect in vehicles in other states, Toyota opted to also send notice to those owners whose cars were registered in the remaining states.

The problem is that the Special Service Campaign Notice – sent to all proposed class members –was an attempt by Toyota to prevent liability for failing to disclose– while trying to avoid actually addressing the problem by effectively disclosing the true significance of the defect and repairing the defective vehicles.

The Special Service Campaign did not tell consumers that their cars were being recalled. Baker Decl., Exh. A.  It did not tell consumers that their cars were defective or that they could

1    not be driven in certain states or in certain weather conditions.  Baker Decl., Exh A.  In fact

2    every effort was made in the first paragraph to lead consumers to believe that their vehicles were

3    not affected.  Consumers in the non-recall states opened the SSC Notice to read:

4                    "This Notice is being sent to advise you that Toyota is conducting
                a Special Service Campaign on 2009-2010 Corolla and Corolla
5                    Matrix vehicles equipped with 2ZR-FE (1.8 liter) engines in the
                following 19 states:
6
                Alaska, Colorado, Idaho, Illinois, Iowa, Kansas, Maine, Michigan,
7                    Minnesota, Montana, Nebraska, Nevada, New Hampshire, New
                York, North Dakota, South Dakota, Vermont, Wisconsin, and
8                    Wyoming"

9    Baker Decl. Exh. A.

10           This misled consumers into believing that their vehicle was not affected, since they only

11   received this notice if they did not live in one of those states. Every consumer who was misled

12   and, therefore, failed to get their defective brake system repaired, saved Toyota money.

13           Plaintiffs' complaint challenges this notice as affirmatively and intentionally misleading.

14   AC ¶49;52-60.  At the Motion to Dismiss stage, these detailed allegations are sufficient.

15   Whether the notice was deceptive is a question of fact.  If it was deceptive, as the Complaint

16   alleges, there can be no question that Toyota can be held liable under B&P 17200 and the

17   Consumers Legal Remedies Act, among others.  That is sufficient to overcome this Motion to

18   Dismiss.

19           **C.      Toyota Omitted Critical Facts About the Defect**

20           In addition to the intentionally misleading wording in the Special Service Campaign

21   notice, Plaintiffs have properly pled that Toyota repeatedly omitted the existence of and details

22   about the defectively designed brakes.  AC ¶¶53-60.

23           Even read in its best light, the notice only refers to "extremely low temperatures" and

24   Toyota has tasked consumers to interpret what that means and make a decision about their brakes

25   on that basis.  Toyota failed to say what conditions exactly could cause this defect to manifest.

26   Toyota also fails to say that the vehicles of consumers who are receiving this notice have

27   defective brakes.  AC ¶51; Baker Decl. Exh. A.  This is basic information to which consumers

28   were entitled.

1

### 1.     Omissions Are a Sufficient Basis for Liability

2      Toyota's assertion that omissions cannot be the basis of liability is wrong.  Omissions are

3   sufficient to satisfy Federal Rule of Civil Procedure 9(b) and to state a claim under the California

4   Consumer Legal Remedies Act (CLRA).

5      The omissions of facts about the existence and nature of the defectively designed brakes

6   pled throughout the Complaint are sufficient.  AC ¶51-60.  Plaintiffs have pled all of the requisite

7   elements of their omissions-based claims, including facts giving rise to Toyota's duty to disclose

8   the brake defect, and Plaintiffs' reliance on Toyota's nondisclosure.  Plaintiffs have also properly

9   stated a claim for unjust enrichment under Business & Professions Code §§17200, 17203 and

10   17204.

11

### 2.     The Complaint Satisfied Rule 9(b) for Fraud by Omission

12      The Ninth Circuit "has interpreted Rule 9(b) to require that allegations of fraud are

13   specific enough to give defendants notice of the particular misconduct which is alleged to

14   constitute the fraud charged so that they can defend against the charge and not just deny that they

15   have done anything wrong."  *Vess v. Ciba-Geigy Corp*,. USA, 317 F.3d 1097, 1106 (9th Cir.

16   2003) (internal quotations and citations omitted).  A pleading "is sufficient under Rule 9(b) if it

17   identifies the circumstances constituting fraud so that the defendant can prepare an adequate

18   answer from the allegations."  *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993)

19   (citations and quotations omitted).

20      Rule 9(b)'s requirement of specificity "may be relaxed as to matters peculiarly within the

21   opposing party's knowledge."  *Wool v. Tandem Computers Inc*., 818 F.2d 1433, 1439 overruled

22   on other grounds by *Hollinger v. Titan Capital Corp*., 914 F.2d 1564 (9th Cir. 1990) (quoting

23   WRIGHT & MILLER, § 1298, at 416 & n. 95). Such "an exception exists where, as in cases of

24   corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts

25   constituting the wrongdoing." *Id.* (citations omitted). In such cases, the particularity requirement

26   may be satisfied if the allegations are accompanied by a statement of the facts upon which the

27   belief is founded.  *Id*.; WRIGHT & MILLER, § 1298, at 416 & n. 96.  Here, Plaintiffs allege that

28   information regarding the defective brakes was and is known by Toyota and not reasonably

1    discoverable by Plaintiffs.  (AC ¶36, 39.)  As a result, Plaintiffs' allegations regarding fraud by

2    omission are sufficient.

3         Likewise, in fraud cases based on a defendant's alleged omissions, federal courts have

4    applied Rule 9(b)'s particularity requirements less strictly.  As this Court recently noted in a

5    similar case alleging that General Motors had failed to disclose that its speedometers were

6    defective, "Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time,

7    place, and specific content of an omission as precisely as would a plaintiff in a false

8    representation claim."  *Falk et al. v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99

9    (N.D. Cal. 2007) (Alsup, J.).  This Court went on to hold that, "a fraud by omission claim can

10   succeed without the same level of specificity required by a normal fraud claim."  *Id* at 1099,

11   citing *Washington v. Baenziger,* 673 F.Supp. 1478, 1482 (N.D.Cal.1987) ("Where the fraud

12   consists of omissions on the part of the defendants, the plaintiff may find alternative ways to

13   plead the particular circumstances of the fraud.  [F]or example, a plaintiff cannot plead either the

14   specific time of the omission or the place, as he is not alleging an act, but a failure to act.")

15        Plaintiffs in this case allege that Toyota's fraudulent conduct occurred over a period of

16   time; specifically, that the Vehicles for model years 2008-10 contained the defective brakes at

17   the time of sale or lease, and that Toyota actively concealed the existence and nature of the

18   defects from Plaintiffs and the class at the time of purchase or lease and thereafter.  (FAC ¶¶ 36,

19   48.)  Plaintiffs also allege that although Toyota released information to its dealers and owners in

20   some states in late 2009 (FAC ¶7, 12, 35, 36), its failure to fully and properly disclose the defect

21   to all affected consumers and the public continues to the present day.  Finally, the Complaint

22   alleges that even after the recall in the so-called "cold weather states", Toyota failed to tell

23   consumers that their cars were defective, and what the true nature of the defect was.  AC ¶¶51,

24   54-60.  The Complaint satisfies Rule 9(b).

25

26

27

28

### 3.    Fraudulent Omissions Are Actionable Under the CLRA.

Toyota wrongly purports that the CLRA prohibits only affirmative misrepresentations, not pure fraudulent omissions.  California courts repeatedly have interpreted the CLRA to proscribe not just affirmative misstatements, but also failures to disclose.  See e.g. *Outboard Marine v. Superior Court* (1975) 52 Cal.App.3d 30, 36-37.  Very recently, the Court of Appeal reiterated in *McAdams v. Monier, Inc*. (2010) 182 Cal.App.4th 174, that a manufacturer's failure to disclose a material fact is independently actionable under the CLRA regardless whether or not the nondisclosure is alleged to have been accompanied by additional affirmative statements that made the omission misleading, where the manufacturer had a duty to disclose the information it withheld.  *Id.* at 184-85; *Outboard Marine* (1975) 52 Cal.App.3d at 37 "[f]raud or deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact.").  The Court must accordingly reject Toyota's suggestion that Plaintiffs' omissions-based claims fail for a lack of additional allegations charging Toyota with specific, contradictory affirmative misstatements.

### 4.    Toyota Had a Duty to Disclose The Brake Defect Because it was an Unreasonable Safety Risk

A known defect that poses an "unreasonable" safety risk—if properly pleaded—gives rise to a vehicle maker's duty to disclose.  (*Chamberlan v. Ford Motor Co*. (N.D.Cal. 2004) 314 F.Supp.2d 953, 965; *Daugherty v. American Honda Motor Co., Inc.,* (Cal. App. 2d Dist. 2006*)* 144 Cal. App. 4th 824, 838, fn8 (distinguishing *Chamberlan*, where a dangerous manifold defect was pled, from case where no dangerous defect was effectively pled) .  In a similar case in the Northern District, Judge Alsup denied defendant GM's motion to dismiss where plaintiffs had pled a dangerous defect with their speedometers.  *Falk*, 496 F. Supp. 2d at 1096, fn*.  The Court explained, "[P]laintiffs successfully allege that the potential for failed speedometers constitutes a safety hazard. . . .[P]laintiffs allege . . . the risk of inadvertent speeding, driving at unsafe speeds, and accidents. These risks are far more "unreasonable" than the monetary consequences in *Daugherty*, and further strengthen plaintiffs' arguments that their speedometers were truly

defective. Plaintiffs therefore state sufficient facts to survive a Rule 12(b)(6) motion to dismiss on their allegation of defective speedometers). *Falk v. GMC*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007).)

Plaintiffs have pleaded Toyota's duty to disclose here because the operative complaint straightforwardly alleges that the brake defect can causes vehicles to have substantially increased stopping distance, presenting a clear and unassailable safety hazard.  (FAC ¶¶ 3-7.)  Defective brakes are certainly as dangerous as defective speedometers.  Toyota should have disclosed the defect at or before the time of sale, should have disclosed it when Toyota sent the letters to the "non-cold-weather" states, and should have disclosed the defect when it sent the SSC notices to the non-recall states.

Significantly, the safety issue cannot be resolved in the context of a dispositive motion because it presents a question of fact for a jury.  (See, e.g., *Glover v. BIC Corp.*, 6 F. 3d 1318, 1325 (9th Cir. 1993) (whether disposable lighter posed safety risk was question for jury); *United States v. General Motors Corp.*, 65 F.R.D. 115, 118-20 (D.D.C. 1974) (whether failure of component was safety-related is question of fact for jury to decide, thereby precluding summary judgment).)  Toyota's apparent disagreement with those allegations is for a jury to decide, and not appropriate for finding at the motion to dismiss stage.

### 5. Plaintiffs Have Also Alleged the Traditional Elements Giving Rise to a Duty of Disclosure.

Plaintiffs here have expressly pleaded Toyota's disclosure duty and articulated the theories under which the disclosure duty arises:

Toyota was under a duty to Plaintiffs and the class to disclose the safety defect in the brakes because:

- Toyota was in a superior position to know the true state of facts about the safety defect in the brakes;

- Plaintiffs and the class members could not reasonably have been expected to learn or discover that the brakes had a dangerous safety defect until manifestation of the failure; and

- Toyota knew that Plaintiffs and the class members could not reasonably have been expected to learn or discover the safety defect.

(AC ¶¶ 36,39.)  Such non-disclosure or concealment constitutes actionable fraud in two pertinent instances: (1) "when the defendant had exclusive knowledge of material facts not known to the plaintiff"; and (2) "when the defendant actively conceals a material fact from the plaintiff." *(Hynix Semiconductor Inc. v. Rambus Inc.*, 441 F. Supp. 2d 1066, 1075 (N.D. Cal. 2006) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)); *accord Goodman v. Kennedy*, 18 Cal. 3d 335, 346-347 (1976); *Falk*, 496 F. Supp. 2d at 1094-95 (discussing and applying *LiMandri v. Judkins*).  Plaintiffs' operative complaint sets out both factual scenarios giving rise to actionable fraud by non-disclosure.

### a.   The Defect is a Material Fact Within Toyota's Exclusive Knowledge.

Toyota was obligated to disclose the brake defect because it was a material safety fact within Toyota's exclusive knowledge.  (FAC ¶¶36, 39); *Judkins,* 52 Cal. App. 4th at 337; *Falk*, 496 F. Supp. 2d at 1096-97.)

### i.   The Fact that a Car's Brakes Might Fail, Depending on the Weather is Material.

Strangely, Toyota has challenged whether including defective brakes in the cars it sold was material to the purchase of the vehicles.  Motion at 10:22, fn 4.

The dependability of brakes is material to the purchase of an automobile.  Consumers do not want, and will not buy, vehicles whose brakes are fair weather friends.  No case law, declaration or further argument should be required to establish this simple fact.

The operative complaint directly alleges the materiality of the concealed brake defect and numerous facts supporting a finding that the defect would be a material consideration for Toyota's customers.  (FAC ¶¶ 43-37).  In addition to the simple commonsense nature of the materiality of defective brakes, this allegation in the Complaint is sufficient to defeat a Motion to Dismiss.

### ii.   Toyota Had Exclusive Access to Information Regarding the Defect.

California law has long recognized that a duty to disclose arises when material facts are within the exclusive knowledge of only one party to a transaction.

> Generally, where one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known or reasonably discoverable by the other party, then a duty to disclose exists.

(*Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1544 (1998).  *See also* Bernard E. Witkin, SUMMARY OF CALIFORNIA LAW, Torts §§ 793, 796-97 (10th ed. 2005) ("Witkin Summary").)

For example, in *Shapiro*, the defendant sellers failed to disclose to the plaintiff buyers the existence of a family of rowdy neighbors in the house next door.  (64 Cal. App. 4th at 1539-40.)  The Court of Appeals overturned the trial court's grant of summary judgment to the defendants, finding that the seller's knowledge, the exclusivity of that knowledge and its materiality were all dispute facts to be determined at trial.  (*Id.* at 1544.)

Here, Plaintiffs have met their obligation to plead that the facts about the brake defect were within Toyota's exclusive control.  (AC ¶¶ 36, 39.)  Only Toyota had access to pre-release testing data.  Only Toyota had access to complaints not only from Canada but from its European and worldwide owners, dealers and regulatory agencies.   And in fact, the Complaint pleads that Toyota has a recent pattern and practice of failing to disclose its knowledge about serious safety defects.  AC¶22-28.  Only discovery – not one-sided declarations based on hearsay – will prove when Toyota first knew the vehicles brakes were defective.

Finally, Toyota was aware of complaints to the Canadian authorities; the average U.S. consumer was not.  Without that information, a customer suffering a brake failure had no way of knowing whether his or her problem was an isolated fluke or the result of a systematic defect.  Because the material facts were with Toyota's exclusive control, Toyota had a legal duty to disclose the safety defect to its consumers.  The Complaint is sufficient to allege the existence of Toyota's independent duty to disclose giving rise to fraudulent concealment-based claims for its failure to do so.

### b.  Toyota Actively Concealed the Defect.

Second, Toyota was also independently obligated to disclose the brake defect because it had actively concealed it.  In the context of both the CLRA and common law fraud, "[a]n active concealment has the same force and effect as a representation that is positive in form."

1   (*Outboard Marine*, 52 Cal. App. 3d at 37; *see also Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85,

2   92-93 (2001); *Stevens v. Superior Court*, 180 Cal. App. 3d 605, 609 (1986); Bernard E. Witkin,

3   CALIFORNIA PROCEDURE, Pleading § 678 (4th ed. 1997) ("active concealment or suppression of

4   facts by a nonfiduciary is the equivalent of false representation, i.e., actual fraud") (emphasis in

5   original) ("*Witkin Procedure*"); Witkin Summary, § 798 ("Even more obnoxious than failure to

6   disclose is active concealment of material facts. . . .  Liability may result, for example, from

7   conduct seeking to conceal defects in real property, or to prevent investigation and discovery of

8   material facts about the property").  Plaintiffs have alleged facts demonstrating Toyota's active

9   concealment of the brake defect, such as by telling the NHTSA and consumers that only vehicles

10  in the 19 states were being recalled.  AC ¶¶36; 38; 50, 51-60.

11                 **c.   The Complaint Adequately Pleads Reliance.**

12          The Complaint straightforwardly pleads reliance.  Plaintiffs allege in detail how they

13  depended on Toyota to have disclosed known safety defects (AC ¶¶ 36, 44-48), that the

14  information Toyota knew or had access to was not available to them (AC ¶¶ 36, 39), that the

15  existence of the defect is information consumers consider extremely important (AC ¶¶ 37-48),

16  and that, "Had Plaintiffs and other class members known of the brake defect, they would not

17  have bought or leased THE VEHICLES, or would have paid a much lower price to purchase or

18  lease a vehicle that could safely be driven only in areas with certain temperatures ranges."  (AC

19  ¶45.)

20          Toyota's attempt to simply assert that these allegations are "conclusory" is simply

21  incorrect.  These allegations describe in detail that Plaintiffs and the class acted upon Toyota's

22  affirmation of quality and safety in purchasing their vehicles, exemplifying classic reliance.

23          **D.   Plaintiffs Have Sufficiently Alleged Violations of the California Unfair**
             **Competition Law.**

24

25          The UCL proscribes practices that are: (1) fraudulent, (2) unlawful, or (3) unfair.  (Cal.

26  Bus. & Prof. Code § 17200; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20

27  Cal. 4th 163, 180 (1999).)  The Complaint alleges facts giving rise to Toyota's liability under all

28  three prongs.  (AC ¶¶106-124.)

1.  **Plaintiffs Alleged That Toyota Engaged in Fraudulent Conduct in Violation of the UCL.**

"Unlike common law fraud, a Business and Professions Code section 17200 violation can be shown even without allegations of actual deception, reasonable reliance and damage. Historically, the term "fraudulent," as used in the UCL, has required only a showing that members of the public are likely to be deceived."  (*Daugherty*, 144 Cal. App. 4th at 838 (citing *Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983)[2]).) Nonetheless, Toyota argues that it cannot be held liable under the fraud prong of the UCL because it was under no duty to disclose the brake defect.  As discussed above, Plaintiffs have not only identified several independent bases for a disclosure duty, they have alleged facts demonstrating that Toyota has breached that duty.  Thus, the argument fails for the same reason it fails with respect to the CLRA claims.

Plaintiffs have alleged what common sense would tell anyone who has had any experience with a motor vehicle; "Plaintiff and the Class reasonably expected the Brake system in their vehicles to be free of dangerous defects, regardless of where their vehicle was registered."  (FAC ¶121).  That is the reasonable and objective consumer expectation.

2.  **Plaintiffs Properly Allege Under the UCL That Toyota Engaged in Unlawful Practices Under the CLRA**

"The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made." (*Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).)  This is so because the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL.  *Cel-Tech*, 20 Cal. 4th at 180.  Plaintiffs properly have alleged that Toyota violated the UCL by engaging in violations of the CLRA, as discussed at length above.

---

[2]   The UCL was amended by Proposition 64 in November 2004, which modifies the standard articulated in *Committee on Children's Television* by requiring the plaintiff to show that UCL violation resulted in a loss of money or property.  (*See* Cal. Bus. & Prof. Code § 17204.  As discussed infra., the named Plaintiffs satisfy that standard here.)

**OPPOSITION TO MOTION TO DISMISS**

1
2

   **3.**  **Plaintiffs Alleged That Toyota Engaged in Unfair Practices under the UCL.**

3    The Complaint also alleges Toyota's violation of the "unfairness" prong of the UCL,

4 under either of the two tests set used by California courts.  Under the narrower test established by

5 *Cel-Tech*, and described in *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 937-38

6 (2003), a defendant's business practice is "unfair" if the "public policy which is a predicate to

7 the action [is] 'tethered' to specific constitutional, statutory, or regulatory provisions."  (*Gregory*

8 *v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002).)  Thus, Toyota's violations of the UCL

9 are specifically "tethered" to the statute that Toyota directly violated: the CLRA.  In addition,

10 plaintiffs have properly pled that to mislead consumers by sending the SSC letter, but failing to

11 clearly disclose that their vehicles had a defect, and the true nature, extent and severity of that

12 defect, Toyota has committed an unfair business practice.

13    Furthermore, to build its reputation on quality and dependability, then sell a vehicle (for

14 full price) with defective brakes, and then to try to avoid repairing as many of those brakes as

15 possible, is an unfair business practice.

16   **E.**  **Plaintiffs Have Sufficiently Alleged Breach of the Express Warranty and the Implied Warranty of Merchantability.**

17

18    Plaintiffs can, and have, successfully claimed breach of the implied warranty of

19 merchantability.  The law does not hold Toyota harmless from either express or implied warranty

20 claims simply because they sell through a dealer.  Courts have held that in some cases the privity

21 requirement for both express and implied warranty claims can be relaxed.  See *Atkinson v. Elk*

22 *Corporation of Texas*, 142 Cal. App. 4th 212, 229 (2007) (holding that where the plaintiff could

23 sue for breach of the express warranty without having purchased directly from the manufacturer,

24 plaintiff could also sue for breach of implied warranty absent privity).  This is particularly

25 appropriate where, as here, there are allegations that the Defendant made representations about

26 the quality or reliability of the produce directly to consumers.  *Id.* At 229.  The Complaint

27 alleges what is already well-known, that Toyota has built and marketed a reputation with

28 consumers for reliability and safety.  AC , at pg. 4:2-3; ¶19-21.  Toyota has, "over a generation

1    or so…built its reputation - and U.S. Market share – on dependability, at a time when General

2    Motors, Ford and Chrysler couldn't shake being identified with lemons.'" AC ¶20.  It would be

3    inequitable to allow Toyota to prosper from these representations, but not to bear the

4    consequences of its express and implied promises to consumers.

5    **V.       CONCLUSION**

6          Defendant sold cars with defective brakes and has tried every dodge and misdirection to

7    avoid making consumers whole.  The Court should deny Defendants' motion to dismiss in its

8    entirety and allow this case to proceed.   Should the Court grant Defendant's motion in whole or

9    in part, plaintiffs respectfully request leave to amend the complaint.

10

11   DATED: April 27, 2010                          By:  ___/s/_____

12                                                        Michael McShane
                                                         Jason T. Baker
13                                                       Audet & Partners LLP.
                                                         221 Main Street, Suite 1460
14                                                       San Francisco CA 94105
                                                         Telephone: 415.982.1776
15                                                       Facsimile: 415.568.2556

16                                                       Michael F. Ram
                                                         SB #104805
17                                                       Ram & Olson, LLP
                                                         555 Montgomery Street, Suite 820
18                                                       San Francisco, CA 94111
                                                         Telephone: 415.433.4949
19                                                       Facsimile: 415.433.7311

20                                                       Robert K. Shelquist, Esquire
                                                         Lockridge Gridanl Nauen, PLLP
21                                                       Suite 2200
                                                         100 Washington Avenue South
22                                                       Minneapolis, MN 55401
                                                         Tel:  (612) 339-6900
23                                                       Fax:  (612) 339-0981
                                                         E-mail: rkshelquist@locklaw.com
24
                                                         Charles J. LaDuca, Esquire
25                                                       Alexandra C. Warren, Esquire
                                                         Cuneo Gilbert & LaDuca, LLP
26                                                       507 C Street, N.E.
                                                         Washington, DC 20002
27                                                       Tel:   (202) 789-3960
                                                         Fax:   (202) 789-1813
28                                                       E-mail:  charlesl@cuneolaw.com