**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO CONTRERAS and MADELINE HUNTER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES USA, INC., and DOES 1 through 50,<br><br>Defendants.<br>_____/ | No. C 09-06024 JSW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT** |

**INTRODUCTION**

Now before the Court for consideration is the Motion to Dismiss Plaintiffs' Amended Class Action Complaint filed by Defendant Toyota Motor Sales, Inc. ("TMS"). Having considered the parties' papers, relevant legal authority, the record in this case, and having had the benefit of oral argument, the Court HEREBY GRANTS TMS's motion to dismiss for lack of standing.

**BACKGROUND**

Plaintiffs, Mario Contreras ("Contreras") and Madeline Hunter ("Hunter") (collectively "Plaintiffs") bring this action on behalf of themselves and a putative class of similarly situated persons "who own or lease 2009 and 2010 Toyota Corolla, and Toyota Corolla Matrixes and 2009 and 2008 and 2009 Scion xD vehicles with 1.8 liter engines" (collectively "the Vehicles"). (Amended Class Action Complaint ("AC") ¶ 4.) Contreras and Hunter each own 2009 Corollas

with 1.8 liter engines.

According to Plaintiffs, the Vehicles are factory equipped with a vacuum-assisted brake system. Plaintiffs allege that, under certain driving conditions in low temperatures, "condensation from the crank case freezes in such a way that it blocks the suction port for the brake vacuum, causing it to fail," rendering the brakes "much more difficult to apply." "Unbeknownst to the driver, stopping distance can be substantially increased." (*Id.* ¶¶ 5-6; *see also id.* ¶¶ 30-31; Declaration of Jason Baker ("Baker Decl."), Ex. A ("Special Service Campaign Notice").)[1]

Plaintiffs allege that TMS learned of the defect as early as February 2009 but did not complete a recall mailing until December 2009. (*Id.* ¶¶ 32-35.) Plaintiffs also allege that TMS limited the recall to owners whose vehicles are registered in 19 states ("the Recall States").[2] (*Id.* ¶¶ 7, 38-39.) However, it is undisputed that Toyota sent a Special Service Campaign Notice regarding the alleged brake defect to owners of Vehicles registered in Non-Recall States. (Baker Decl., Ex. A.)

The Special Service Campaign Notice provides, in part:

Dear Toyota Customer:

This notice is being sent to advise you that Toyota is conducting a Special Service Campaign on 2009-2010 Corolla & Corolla Matrix Vehicles equipped with 2ZR-FE (1.8 liter) engines in the following 19 states:

> *Alaska, Colorado, Idaho, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New York, North Dakota, South Dakota, Vermont, Wisconsin, and Wyoming.*

**What is the condition?**

> If the vehicle is operated in extremely low temperatures, there is a possibility that condensed moisture from a positive crankcase ventilation (PCV) port may seep into the brake system vacuum port

---

[1] The Special Service Campaign Notice is explicitly referenced in the AC, although it was not attached to that pleading.

[2] The putative class is limited to consumers who own or lease one of the Vehicles that is, or was at the time TMS instituted the recall, registered in a state other than one of the Recall States. (*Id.* ¶ 8.) The Court shall refer to these states as the "Non-Recall States."

2

> ("port") and freeze. The port is located inside the intake manifold and provides vacuum assist for the brakes.
>
> Should this condition continue, ice may slowly accumulate at the port and in the worst case, ultimately plug the port. As a result, power to assist the brakes would gradually decrease (eventually to zero), and the increased pedal pressure required could lead to greater stopping distances.
>
> **What should you do?**
>
> If you believe that there is a possibility for your vehicle to be operated in the 19 specified states or in the conditions described above, please contact any authorized Toyota dealer and make an appointment to install a newly designed intake air connector that will relocate the brake system vacuum port at **NO CHARGE** to the vehicle owners.
>
> The repair will take approximately 1 hour. However, depending on the dealer's work schedule, it may be necessary to make your vehicle available for a longer period of time.

(Baker Decl., Ex. A (all emphases in original).)

Plaintiffs allege that the Special Service Campaign Notice is "misleading, unclear and ineffective," because "the first paragraph of the letter informed owners that the recall only applied to states other than their own," and, thus, "in all likelihood most owners ignored the rest of the recall notice." Plaintiffs also allege that the remainder of the notice is "woefully inadequate" because it fails to provide owners with any information about "what driving conditions" and "for what duration, might induce the brakes on their vehicles to fail." (AC ¶¶ 51-54; *see also id.* ¶¶ 55-59, 63-66.)

Plaintiffs do not allege that their Vehicles have manifested this defect, that it is reasonably likely that they will operate their Vehicles in one of the 19 Recall States, or that they will operate their vehicles in "extremely low temperatures," for sustained periods of time in the future. Plaintiffs allege they have been injured as a result of TMS's conduct because had they known of the alleged defect, they would not have purchased or would have paid less for one of the Vehicles and because their Vehicles are worth substantially less than they would have been without the alleged defect.[3]

---

[3] Plaintiffs also expressly exclude any claims for personal injury from the putative class. (*Id.* ¶ 73.)

3

1    Based on these, and other allegations, Plaintiffs assert claims against TMS for: (1)
2 violations of California's Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.*
3 (the "CLRA claim"); (2) Breach of Express Warranty; (3) Breach of Implied Warranty; and (4)
4 violations of California Business and Professions Code §§ 17200, *et seq.* (the "Section 17200
5 Claims").[4]

6    TMS moves to dismiss each of these claims on the basis that: (1) Plaintiffs do not have
7 standing to pursue the claims; (2) each of Plaintiffs' claims fail because Plaintiffs have not
8 alleged facts demonstrating they have been damaged; and (3) Plaintiffs fail to state a claim for
9 relief on each claim asserted.  TMS also moves to strike certain allegations from the AC.
10 Because the Court concludes that Plaintiffs have not alleged sufficient facts to demonstrate they
11 have standing, and that any amendment would be futile, the Court does not reach TMS's
12 alternative arguments.

**ANALYSIS**

**A.    Applicable Legal Standards**.

   TMS moves to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure
12(b)(1) ("Rule 12(b)(1)").  Standing pertains to a federal court's subject-matter jurisdiction
under Article III and, thus, is properly raised in a Rule 12(b)(1) motion.  *White v. Lee*, 227 F.3d
1214, 1242 (9th Cir. 2000).  A plaintiff, as the party invoking federal jurisdiction, bears the
burden of establishing these elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561
(1992).

   A party moving to dismiss under Rule 12(b)(1) may make a facial challenge to
jurisdiction by challenging the sufficiency of the jurisdictional allegations in a complaint.  *Safe
Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  With respect to standing, "[a]t
the pleading stage, general factual allegations of injury resulting from the defendant's conduct
may suffice" to establish standing "for on a motion dismiss, [courts] presume that general

---

[4] Plaintiffs assert three claims for relief for violation of Section 17200.  Their Fourth Claim for Relief is premised on allegedly unlawful business practices.  Their Fifth Claim for Relief is premised on allegedly unfair business practices.  Their Sixth Claim for Relief is premised on allegedly fraudulent business practices.  (*See* AC ¶¶ 106-124.)

4

allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal cite and quotations omitted).

However, a party may also assert a factual challenge under Rule 12(b)(1) and attack "the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citation omitted); *accord Safe Air*, 373 F.3d at 1039. "'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" *Id.* (quoting *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).

In resolving a factual attack on jurisdiction, the court "need not assume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039 (citation omitted). However, when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action," a jurisdictional finding of genuinely disputed facts is inappropriate. *Id.* (internal quotations and citations omitted).

**B.      Evidentiary Issues.**

TMS has raised both a facial and a factual challenge to Plaintiffs' standing. (Mot. at 1:28:2:6.) In support of its motion, TMS submits a Request for Judicial Notice, in which it asks the Court to take judicial notice of weather records for the United States, which are maintained by the National Climatic Data Center. According to TMS, these records show that the "lowest normal daily minimum temperature in the United States is -22 degrees Fahrenheit, which occurs in Barrow, Alaska, during February." (Request for Judicial Notice at 2:9-10, Ex. A.)

TMS also submits two declarations from Harold E. Clyde, a mechanical engineer employed by TMS. (Declaration of Harold E. Clyde ("Clyde Decl."), ¶ 1.) Mr. Clyde's first declaration pertains to the circumstances regarding TMS's voluntary recall of the Vehicles and the phases in which it was instituted and information about when the alleged defect is likely to manifest itself. (*See* Clyde Decl., ¶¶3-8.) Mr. Clyde also attests to the fact that each of the

5

1 named Plaintiffs have received the service provided as a part of the Special Service Campaign
2 and that approximately 57% of vehicle owners in Non-Recall States that received the Special
3 Service Campaign Notice during the second phase of the campaign also have received this
4 service.  (*Id.* ¶¶ 8-9; Supplemental Declaration of Harold Clyde ("Clyde Supp. Decl."), ¶¶ 3-4,
5 Exs. A-C.)

6 Plaintiffs object and move to strike Mr. Clyde's opening declaration and object to
7 Toyota's Request for Judicial Notice.  In response to Plaintiffs' objections, TMS clarifies that it
8 relies solely on Mr. Clyde's statements regarding repairs to Plaintiffs' vehicles and that the
9 additional information is background information only and not necessary to a resolution of this
10 motion.  Because TMS has made a factual challenge to Plaintiffs' standing under Rule 12(b)(1),
11 Plaintiffs' objection to Mr. Clyde's declaration on the basis that it is procedurally improper on a
12 motion to dismiss is overruled.  The objections to Mr. Clyde's statements and exhibits
13 demonstrating that Plaintiffs have received the repair offered as part of the Special Service
14 Campaign are overruled.  Plaintiffs' remaining objections to the Clyde Declaration and TMS's
15 Request for Judicial Notice are sustained.

16 **C.    The Amended Complaint is Dismissed for Lack of Standing**.

17 In order to satisfy the Constitution's standing requirements, a plaintiff must show: (1)
18 they he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b)
19 actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the
20 challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative,
21 that the injury will be redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-61; *see also*
22 *Covington v. Jefferson County*, 358 F.3d 626, 637-38 (9th Cir. 2004).  In order to establish
23 standing under their CLRA claim Plaintiffs must establish they suffered an actual injury as a
24 result of TMS's alleged conduct.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-60 (9th Cir. 2009);
25 *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 802 (2006).  To establish standing
26 under the Section 17200 claim, Plaintiffs must show they suffered an injury in fact and have lost
27 money or property as a result of the alleged unfair competition.  *Aron*, 143 Cal. App. 4th 802.
28

In addition, the Plaintiffs "must establish standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185 (2000).

TMS argues that Plaintiffs lack standing because the facts alleged do not demonstrate that Plaintiffs' alleged injuries actual or imminent, rather than conjectural or hypothetical. In support of this argument, TMS contends that this case is a "no-injury" product liability case and relies on a number of such cases to support its position that Plaintiffs do not have standing to pursue any of the claims. (*See* Mot. at 6:24-8:7 (citing cases).)[5] For example, in *Birdsong*, the plaintiffs alleged that Apple, Inc.'s iPod product was defective because it posed an unreasonable risk of noise-induced hearing loss to its users. The Ninth Circuit noted that the plaintiffs neither claimed that "they suffered or imminently will suffer hearing loss" from their iPod use nor that they used their iPods in a way that exposed them to the alleged risk of hearing loss. Therefore, they failed to allege a "concrete and particularized [injury] *as to themselves*" and had not shown they had standing to pursue their Section 17200 claim. *Birdsong*, 590 F.3d at 961 (emphasis in original); *see also id.* at 960 n.3 (finding that plaintiffs would lack Article III standing for the same reason they lacked standing under Section 17200).

The court also concluded that the allegations in the plaintiffs' complaint demonstrated that the alleged injury was conjectural and hypothetical, because the plaintiffs alleged only that "some iPods have the 'capability' of producing unsafe levels of sound and that consumers 'may' listen to their iPods at unsafe levels combined with an 'ability' to listen for long periods of time." *Id.* at 961. The court rejected the plaintiffs' claim of economic harm because any injury resulting from an alleged diminution in value rested "on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in risky manner." *Id.* Finally, the plaintiffs' "benefit of the bargain" theory of injury failed to establish standing because they did not "allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time" and thus, the alleged loss of a safety benefit was never part of the bargain. *Id.*

---

[5] Plaintiffs did not respond to this argument in their brief, although the Court gave them the opportunity to do so at oral argument.

7

TMS also relies on *Whitson v. Bumbo*, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) to support its position that Plaintiffs' allegations are insufficient to demonstrate they have standing. In the *Whitson* case, the plaintiff brought claims under state consumer protection laws and for breach of express and implied warranties with respect to an allegedly defective baby seat. The plaintiff did not allege that her baby seat manifested the purported defect and also had not alleged that she was required to replace the allegedly defective seat. Therefore, the court rejected plaintiff's argument that she could establish standing on an benefit of the bargain theory, because she had not alleged facts to show that she did not receive the product for which she bargained. *Id.* at *5-*6. In contrast to *Birdsong* and *Whitson* are *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) and *Sanchez v. Wal-Mart Stores, Inc.*, 2008 WL 3272101 (E.D. Cal. Aug. 6, 2008).

In the *Cole* case, the plaintiffs' claims arose out of alleged defects with the defendant's side-impact airbag system, which plaintiffs alleged the defendant promoted as an added safety feature. *Cole*, 484 F.3d at 720. The plaintiffs vehicles did not manifest the alleged defect and, like the Plaintiffs in this case, claims for personal injuries were excluded from the putative class. *Cole*, 484 F.3d at 718-19. The defendant argued that because plaintiffs could allege only that the airbag systems in their vehicles were "potentially defective," any injury was speculative. The court rejected this argument and found that plaintiffs had sufficiently alleged an economic injury, because their vehicles were defective at the moment of purchase and because of the defendant's allegedly unreasonable delay in offering service for the defect. Accordingly, the court concluded that it "was sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered." *Id.* at 723. In the *Sanchez* case, which was resolved on a motion for summary judgment, the court concluded that the plaintiff's allegations that she purchased an allegedly defective baby stroller, which she had to replace, were "minimally sufficient to confer standing to assert a claim for relief" under Section 17200 and that there were questions of fact as to whether the plaintiff possessed a less valuable stroller "than that for which she had bargained." *Sanchez*, 2008 WL 3212101 at *3.

8

At oral argument, Plaintiffs argued that *Birdsong* and *Whitson* pertained to product misuse and did not allege that the products would not work as intended. In Plaintiffs' view, the allegations in case are distinguishable, because there is no way to mitigate the risk from the alleged defect without impairing the intended purpose of the Vehicles. The Court finds Plaintiffs' arguments unpersuasive and concludes that this case is more like *Birdsong* and *Whitson* than *Cole* or *Sanchez.*

First, Plaintiffs do not allege that their vehicles have manifested the alleged defect. Second, setting aside any possible dispute as to the specific conditions that would be necessary for the alleged defect to manifest itself, Plaintiffs have not alleged that it is reasonably likely that they intend to drive their vehicles in the conditions set forth in the Special Service Campaign Notice or in one of the Recall States. Unlike the plaintiffs in the *Cole* case, Plaintiffs here do not allege that TMS promoted its braking system as an added safety feature. Unlike the plaintiff in the *Sanchez* case, Plaintiffs do not allege that they were forced to replace their vehicles after learning of the alleged defect or that they incurred any out-of-pocket damages. Finally, Plaintiffs allegation that their vehicles are worth substantially less than they would be without the alleged defect is conclusory and unsupported by any facts.

This Court finds that, as in the *Whitson* case, the AC in this case "oscillates between tort and contract law language but fails to allege any actual injury. As such, the [AC] as alleged does not meet the standing requirements of Article III," Section 17200 or the CLRA, and the Plaintiffs do not have standing under a benefit of the bargain theory and have not demonstrated they have standing based on alleged economic harm. Accordingly, Plaintiffs have failed to allege facts sufficient to that they have suffered "injury in fact" and, thus, have failed demonstrate they have standing to pursue these claims. Plaintiffs already have amended the complaint once, and the Court gave Plaintiffs the opportunity to set forth what facts, if any, they would include in a further amended complaint. Having considered Plaintiffs' response, the Court finds that leave to amend would be futile.

**CONCLUSION**

For the foregoing reasons, TMS's motion to dismiss for lack of standing is GRANTED. The Amended Complaint shall be dismissed with prejudice, a separate judgment shall issue, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 18, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE